UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | Case No. 22-cr-42 (CRC) |
| **JOSHUA LEE HERNANDEZ** | |
| Defendant. | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR ADJUSTMENT OF SENTENCE**

The defendant, Joshua Lee Hernandez, has filed a motion for an adjustment of sentence. (ECF 40). Hernandez argues that the November 1, 2023, amendments to U.S.S.G. §§ 4A1.1 and 4C1.1 apply to his case and the Court should adjust his sentence. New § 4A1.1 does not apply to Hernandez because he did not receive any criminal history points and new 4C1.1 does not apply to him because he committed an act of violence.

I. **HERNANDEZ DID NOT RECEIVE ANY CRIMINAL HISTORY POINTS.**

The amendment to U.S.S.G. § 4A1.1 applies to defendants who received "additional criminal history points given to offenders for the fact of having committed the instant offense while under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S. SENT'G COMM'N, AMENDMENTS TO THE SENTENCING GUIDELINES (April 27, 2023), available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf. The Court found Hernandez was in criminal history category I and he did not receive any additional criminal history points due to him being under a criminal justice

1

sentence at the time he committed the instant offense. (ECF 38 at ¶ 3). This amendment does not apply to him.

II.     **HERNANDEZ ASSAULTED OFFICERS.**

The amendment to U.S.S.G. § 4C1.1 reduces a defendant's offense level by two levels if the defendant did not receive any criminal history points and the instant offense did not involve specified aggravating factors. One of these factors is if Hernandez used "violence or credible threats of violence in connection with the offense." U.S.S.G § 4C1.1(a)(3). On November 2, 2022, Hernandez pled guilty to 18 U.S.C. §§ 111(a)(1) and 231(a)(3) and admitted in the Statement of Offense that he "joined in a group push against the officers" and that he "hit officer B.A. on his riot helmet with the flagpole." (ECF 26 at ¶ 11).



*Hernandez (circled in red) reaches with his flagpole (circled in yellow) to hit Officer B.A.*

2

Hernandez used violence against Officer B.A., admitted to it, and pled to two felonies related to his acts of violence.   U.S.S.G. § 4C1.1 is inapplicable due to Hernandez's violent actions.

Additionally, the Court should not apply § 4C1.1 here because the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers.  Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See*, *e.g.*, *United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption.   Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").

Moreover, the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010.   Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6.   This is particularly so given

the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack.

Due to the unique nature of the January 6 mob, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that even if the Court finds that § 4C1.1 applies, the Court should nevertheless vary upwards by two levels to counter any reduction in offense level. Such treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.

Finally, Hernandez, who was sentenced on February 2, 2023, is seeking the retroactive application of § 4C1.1 in his request to be resentenced. Although § 4C1.1 applies to all sentencings that take place on or after November 1, 2023, the Commission has determined that a sentencing court may not retroactively apply § 4C1.1 to reduce a sentence that was previously imposed for three months after the effective date of § 4C1.1 on November 1, 2023. U.S.S.G. § 1B1.10(d). That means that a motion to reduce a sentence pursuant to the retroactive application of § 4C1.1 may not be granted before February 1, 2024.

### III. THE 3553(A) FACTORS WEIGH AGAINST REDUCING HERNANDEZ'S SENTENCE.

Even if the November 1, 2023, amendments applied to Hernandez, which they do not, Hernandez's conduct does not warrant a reduction in his sentence "after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(2).

Hernandez joined the mob on the West Terrace as he made his way to the Senate Wing Doors. He was one of the first rioters to breach the Capitol. Less than one minute after the first

breach, Hernandez climbed through a window at the Senate Wing Door with fire alarms ringing and broken glass and overturned furniture on the ground. He then paraded throughout the Capitol for 40 minutes, including entry into the Speaker's Conference Room and Senate Gallery. On his way to the Speaker's Conference Room, he hit a door in the hallway with his flagpole and attempted to enter by turning the doorknob. This was feet from where Congressional staff were barricaded in an office, cowering in fear. Hernandez continued into the Rotunda. He pushed past police to the Memorial Doors where he coordinated a group-push with other rioters against police officers, forcing the Memorial Doors open. This allowed the rioters to come streaming into the Capitol. He then assaulted a police officer with his flagpole by hitting him in the helmet. That officer was than surrounded and attacked by the mob.

      Hernandez's actions on January 6 do not warrant a reduction when considering the 3553(a) factors.

## CONCLUSION

The government respectfully submits that the Court should deny Hernandez's motion to adjust his sentence.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:    */s/ Brian Brady*
                Brian Brady
                Trial Attorney, Department of Justice
                DC Bar No. 1674360
                1301 New York Ave. N.W., Suite 800
                Washington, DC 20005
                (202) 834-1916
                Brian.Brady@usdoj.gov